All right, good morning to everybody, welcome to day two of this panel, with Judge Barksdale and Judge Dennis. We have two cases to be argued, we'll probably go straight on through with them all. The main thing is just, most of you I'm sure have experience, is just stay in the should be good. So we're going to call the first case, number 21-50431, Ney v. 3i Group. Is that how you pronounce it? Okay. Good morning, Your Honors, and may it please the Court. The Supreme Court's decision in Atlantic Marine marked a sea change in forum non-convenes law where forum selection clauses are concerned. This appeal presents an issue left unaddressed by that decision. Can a district court properly consider extrinsic evidence of an ancillary agreement on a pre-answer, pre-discovery motion to dismiss for forum non-convenes when the plaintiff's complaint doesn't refer to the agreement, doesn't rely on the agreement, and the parties dispute whether defendants who didn't sign the agreement can even enforce it? This Court has not addressed that question . . . Your Honor, I was pleased that I understand you're claiming the district court shouldn't have reviewed the rollover and purchase agreements. The other side argues you've waived this by not properly objecting to the magistrate judge's report and recommendation, etc. In your brief, you spend several pages without record sites, and they're essentially saying that how you went about preserving this. I know you put one in a footnote. You know there's an old joke, if you want to hide something, put it in a footnote. And one of your objections was in this footnote. So how is this preserved? Your Honor, this issue is preserved because this issue was front and center throughout the entire litigation process. Excuse me. I cannot . . . I can't understand. Can you change the volume a little bit, please, or . . . Should I continue? Go ahead and cut. Let's see. So this issue is preserved because this was litigated throughout the proceeding below. And it's . . . But how did you preserve it in your objections to the magistrate judge's report and recommendation? That's where you have to do it. We preserved it not just in a footnote, Your Honor, but also in the body of the report and recommendation. We've cited to Record Excerpt 882 on that page. That is where we've preserved the argument. Ney contended that in his pleading, he does not even reference the rollover agreement,     the report and recommendation? Yes, Your Honor. to fairly construe his pleading as seeking interpretation and enforcement of its provisions. That's in the body of the report and recommendation, not just in the objection. So that issue is preserved. You hope? The court has not addressed the question of whether it can consider these written agreements on this type of motion. And Ney thinks that it makes good sense to import the procedural guardrails from the Rule 12b-6 context, that the district court shouldn't look at these agreements unless       It's a good point. And I think that's a good point. And I think that's a good point. and Central to the claims. Without this rule, the district court risks making premature fact determinations on the basis of one party's extrinsic evidence at the dismissal stage. And that's exactly what happened in this case. The district court considered these ancillary agreements attached to the motion to dismiss without first asking whether they were referenced in the complaint and Central to the claims. And then it just accepted 3I Defendant's allegations that it could enforce these agreements, even though they didn't sign them, on various fact-intensive estoppel theories before the parties had the opportunity to do any discovery. And that bad process drove bad results. Because the parties were not able to litigate the question of whether- This is on a motion to dismiss for lack of jurisdiction, correct? A motion to dismiss for forum non-convenes on the basis of a forum selection clause. Right. So it's not a 12B6 necessarily. And under the rule, the district judge on a motion to dismiss of this type can look to facts and disputed facts. So I'm not so sure the district court couldn't look at these agreements to determine whether there's jurisdiction. Your Honor, the point is not that the district court couldn't look at these agreements. It's that the court's consideration of extrinsic evidence at the dismissal stage can't be based on one party's extrinsic evidence. So you're right. There are two categories of motions to dismiss under the federal rules. There's your classic 12B6 challenge, a complaint-based challenge, and there are procedural guardrails in place for that kind of challenge to ensure that the court isn't basing its determination on extrinsic evidence. It's basing its determination on the well-pleaded allegations in the complaint. And then the second type. And any attachments to the complaint. And any attachments to the complaint, which are deemed a part of the complaint, so that the dismissal is indeed based on the complaint itself. And if it's looking to extrinsic material outside of the complaint, then under a Rule 12B6 motion, it has to convert that to a summary judgment motion and give the plaintiff— But it wasn't a 12B6. I'm getting there, Your Honor. There's also the second type, the second type of motion to dismiss, an evidence-based motion to dismiss. And you're right. That would be a motion to dismiss for lack of personal jurisdiction, for example, when the defendants want to rely on material outside of the complaint, like an affidavit, relying on allegations that were not in the complaint. But in that case, there's also a process for ensuring that the district court isn't just looking at one party's extrinsic evidence. There are guardrails in place. Specifically, if the court wants to look to affidavits, the plaintiff has to be given the opportunity to put forth his own evidence as well and do any discovery necessary to obtain that evidence. But what happened here— Did you attach anything to your response to the motion to dismiss? So Ney asked in the context of jurisdiction, in responding to the motion to dismiss for lack of personal jurisdiction, did you attach anything to your response to this form of non-convened dismissal? And let me explain. Did you contest that these, the rollover agreement and the purchase agreement were not valid? We were not contesting that those agreements are not valid. That's not our challenge. Our challenge is that— Why couldn't the court consider them on this unique motion to dismiss procedure the court can use, where it can consider just the complaint, it considers undisputed facts and it can consider disputed facts? Because here what the district court did was it just assumed, without requiring defendants to substantiate this with evidence, that they could enforce these agreements. So let me give you an example. With respect to the rollover agreement, the district court just accepted 3I defendant's allegation that they could enforce the agreement as closely related entities. That enforcement theory considers whether a non-signatory to an agreement is so closely related to a signatory to the agreement that it should have been foreseeable that they would step into the shoes of that signatory and enforce the agreement. That is a fact-intensive estoppel theory. I didn't understand your answer to Judge Barksdale's question. Did you, now you personally, attach documents or papers to be considered? I heard you say, well, we need a discovery. So does that mean the answer is no, that there weren't any documents or papers from your client's side that were presented? We filed a motion asking for discovery specifically into... I got that part. I got the discovery part. I got that part. I'm just asking so I'm clear. Beyond discovery, so even if the answer to that is no, were there any papers, affidavits, material, anything? Let's say, for example, somebody wants to amend and the judge is saying no. He says, well, if you amend, what would you have? You proffer something to say, well, if you let me amend, here's what it would look like. I'm trying to get the picture here. I hear what you're arguing saying wasn't done. I'm trying to find out from your client's side, besides needing discovery, was there anything available or did you proffer or whatever of a document? The district court did not require 3I defendants to supplement their allegation that these entities were closely related with any affidavits and without that affidavit, there was no evidence for NAY to challenge. NAY also didn't submit any evidence attached. Here's a simple question. They presented the purchase agreement and the rollover agreement. In your response, in an affidavit or any way else, did you challenge the authenticity or validity of those two documents? We did not challenge the authenticity of those documents because that, again, Your Honor, is not our argument. We don't contest that they're not authentic. NAY's position is that 3I defendants, as non-signatories, have not met their burden to demonstrate why and under what theory they are nevertheless entitled to enforce those documents. If you didn't challenge the authenticity and then if you didn't offer anything and the discovery, I mean, how does that get you where you need to be? Because we didn't get the discovery that we needed to challenge the enforcement theories. We didn't get the opportunity to litigate whether or not 3I defendants, as non-signatories, could enforce the form selection clauses within these agreements. Just in a snapshot, give us an idea. What is the discovery that you're talking about? Whom would it have been and all of that? What would that have been? Exactly. So with respect to the rollover agreement, 3I defendants asserted that they could enforce this on a closely related theory, that they were so closely related to New Amsterdam that it should have been foreseeable that they could have enforced this agreement. The discovery that we were asking for specifically was into the relationship between 3I defendants, New Amsterdam, and Andrew Olenek. And we asked for that discovery because in the jurisdiction context, 3I defendants were making contradictory statements. While resisting personal jurisdiction, they were trying to drive as much distance as possible between them and the Texas-based New Amsterdam entities because they didn't want to be subject to jurisdiction in Texas. So on the one hand, in the personal jurisdiction context, they're contesting that they were closely related to New Amsterdam, and they turned around and argued the exact opposite thing to say that they could enforce the forum selection clause in the rollover agreement as closely related entities. This process gave the 3I defendants all of the procedural benefits of an early dismissal and nay, none of the procedural benefits because even though the district court assumed 3I defendants' allegation that they could enforce these agreements, it didn't give nay the And because the parties didn't litigate that issue, that led to bad results. The district court did was conclude that 3I defendants could enforce the purchase agreement, for example, on a direct benefit estoppel theory even though that theory doesn't apply to the facts of this case. Well, how did your complaint link your client to New Amsterdam or the other entities? Surely your complaint goes into some detail about that. In the fact that you claim you're entitled to this quote, kicker, close quote of what, $20 million or was it six? I can't remember. $20 million, Your Honor. So what did you allege in your complaint? In our complaint, we allege that Andrew Olenek, operating on behalf of 3I defendants, promised nay $20 million in exchange for various pre- and post-acquisition performance. Which concern the rollover in the purchase agreements? That's not the inquiry before us, Your Honor. I'm sorry. Which concern the rollover in purchase agreements? Nay is not. Right. Now, you also claim that you wanted a traditional form non-convenience analysis. Is that correct? Our position is that because 3I defendants haven't demonstrated that they can enforce a forum selection clause in any of these agreements, then the normal form non-convenience analysis should kick in. Right. How did you preserve that point in district court? That's just a backstop, Your Honor, if the court . . . No, ma'am. My question is how did you preserve that point in district court? That's not something that we objected to in the R&R, but the point is that if there's no forum selection clause . . . I'm sorry. What did you say? That's what? I'm sorry? What did you say about the report and recommendation? That wasn't an argument that we raised in the report and recommendation because Nay's point was that 3I defendants couldn't enforce the forum selection clause. Oh, you're raising this for the first time on appeal. Not raising this for the first time. Just in case the court wanted to perform the traditional analysis, we inserted that to say even if these forum selection clauses . . . because these forum selection clauses don't apply and if the court did a conventional private and public interest . . . Which court? The district court or this court? This court, just to show that the traditional balancing also doesn't get 3I defendants to Delaware. I want to just emphasize really quickly how this process led to bad results with respect to direct benefit estoppel. Neither Nay nor 3I defendants are signatories to the purchase agreement, but the district court bound Nay to the purchase agreement on a direct benefit estoppel theory. But that theory only considers whether a signatory to an agreement can enforce a forum selection clause in that agreement against a non-signatory. And courts only seriously consider applying that theory when the non-signatory has sued a signatory premised in part on the agreement. That's not this case. Neither Nay nor 3I defendants are signatories to the agreement. Direct benefit estoppel is not a means available for 3I defendants to enforce the purchase agreement's forum selection clause against Nay. And with respect to the rollover agreement, setting aside the process issues that limited Nay's challenge to its scope, the district court also erred in finding that Nay's claims fell within the scope of the rollover agreement, which only applies if Nay's claims seek the benefit of either the rollover agreement or a related agreement delivered in connection with the rollover agreement. Of course, just for this recording, after the transaction acquisition was completed, Nay worked for 3I. Nay stewarded the acquiring entity through the post-acquisition period. Did you mention that in your complaint? That's a part of our complaint. One of his promises was to stay on as CEO. All right. Thank you, Mr. D. That completes your opening, but you can preserve your rebuttal time. Thank you. All right. Mr. Roth? Good morning. May it please the court, Martin Roth on behalf of the 3I appellees. The issue in this appeal is whether the district court correctly dismissed Mr. Nay's suit for a $20 million oral kicker related to the magnitude sale, where all seven interwoven written contracts governing that deal require any related suits be brought in Delaware. The answer must be yes. Mr. Nay negotiated the magnitude transaction, signed six of the contracts at issue. Is that alleged in the complaint? It is alleged in the complaint, Your Honor, that he negotiated the transaction. He signed six of the contracts, and he approved the seventh that he didn't sign. Does the complaint use the term rollover agreement or purchase agreement? The complaint talks about rolling or investing $6 million into the company, and it expressly talks about the closing of the transaction, the post-acquisition period. And as the magistrate found, such allusions were clearly references to the purchase agreement and the deal. He talks explicitly about the deal and remaining on board. He signed three contracts on the same—three contracts were signed on the same day, the restrictive covenant agreement. They're defined in reference to one another as the complete agreement. The rollover agreement he signed is an exhibit to the purchase agreement, and the restrictive covenant agreement references the purchase agreement and says it was a material inducement for the transaction. The counsel opposite claims he didn't sign those agreements. He signed six. He absolutely signed six. He doesn't dispute it. He didn't sign one. And the one he didn't sign attaches as an exhibit, one he did, and is expressly referenced as an interlocking agreement. The purchase agreement and the rollover agreement you attached to your motion, is his signature on them? His signature is on the rollover agreement. And the purchase agreement is the one agreement he didn't sign, but we also attached to our motion a board approval that he did sign that expressly approves the purchase agreement. And the restrictive covenant agreement he signed also approves the purchase agreement. Under this Court's law and precedent, forum selection clauses where valid, as you've heard there's no contest to here, are entitled to controlling weight in all but the most exceptional cases. We can talk about the contracts or we can rest on our briefs, but I want to touch on the issue the Court's been sensitive to because this entire appeal focuses on an attempt by Mr. Ney to rewrite federal procedural common law in a way that is not required and not in accordance with this Court's precedent. If this Court, first of all, I think Judge Barksdale, your question was entirely pointed. This issue is waived. If you look at the record on appeal site that counsel gave you at 882, that is just the footnote. They did not make this argument to the district court. So you could easily decide this case on waiver. But you also could decide— It would be on plain error. Correct. Then it's on plain error. And it's clearly not plain error because under the law of this Court, specifically the Weber case decided in 2016, that was a post-Atlantic Marine forum selection clause motion of the type that Mr. Ney pretends is this alien species. This Court considered not only the contract, but expert proofs. So that just proves that after Atlantic Marine, the procedural law on a forum selection clause motion remains exactly the same. The Court can consider extrinsic evidence. It can consider affidavits, just like any other forum nonconvenience motion. And Mr. Ney, despite his argument on appeal that he needed discovery, never asked for any discovery related to the agreements. What he asked for was personal jurisdiction-related discovery because one of the three identities in play here is from England, and one of the two challenged personal jurisdiction. The other did not. And then he made an elaborate argument to the magistrate judge that he needed to issue personal jurisdictional discovery and force the parties to go through a cumbersome process before he could even consider the contracts. That argument was rejected as plainly wrong under the Supreme Court's precedent in Sinochem. So this whole notion that there's some fact issue is new and wrong. The question before the Court is a legal question. Do the contracts that we attach apply to this case? That is a legal question with a legal answer. And as this Court has answered consistently in the PCL civil constructors case, Al Copeland, Barnett, and many others in our briefs, you look at the contract and you look at the scope of the contractual clauses with a common sense view toward what the claims in the complaint are. And that's exactly what Magistrate Judge Ney and the District Judge did here. When you look at the contracts, which are incredibly broad and we can go over them, they talk about related to the interpretation or enforcement regarding very broad language. There's simply no way you could read those contracts and say this petition, which alleges conduct based on the deal, doesn't touch on those contracts. And that's why, as a legal question, the Court got it right. Speaking of the choice of law analysis, etc., do you think federal or state law applies? Federal law absolutely applies. So it's Fifth Circuit law under Hainsworth and others. There is some debate about what choice of law applies to the interpretation of the contracts, but the Court is clear in its precedent that federal Fifth Circuit law applies to the enforcement of forum selection clauses. When it comes to the interpretation of the agreements themselves, you still look to federal choice of law rules. But whether you look at Texas law, Delaware law, or Fifth Circuit law, you get to the same place. Because in the PCL civil constructors case decided in 2020, it was a similar set of facts where you had a prime contract, a subcontract, and a bond. And only one of those agreements had a forum selection clause. And much like Mr. Ney here, the opposite party argued the Court should ignore the contracts without the clause, and this Court held expressly in that PCL civil constructors case that where you have a contract expressly referred to and incorporate another instrument in specific terms which show a clear intent to incorporate that instrument, both instruments are construed together. So it's federal law, and I think this Court's law dictates that you look at all these contracts as a whole. The only other point I'd make on Mr. Ney's argument is if you think about it for a minute, it doesn't make much sense. The whole point of Atlantic Marine is to get a forum selection clause before the Court early on in litigation so that parties don't waste time and burden the Court litigating in the wrong forum. If a plaintiff could simply allege an oral contract and say, don't look behind the curtain, ignore all the written contracts, they could force parties to litigate before a district court for years in discovery only to find out that actually the right forum was Delaware and now you have to go back and restart. So it's not the law. There's no precedent. It's waived. And even if you were to get there, it fails by its own terms because I think on this Court's decision in In Re Katrina Canal Breaches and others, a plaintiff cannot artfully plead around an agreement where they reference that agreement. That's the Williams v. Trowler's case as well. So from any angle, the contracts clearly should be considered. And when you consider the contracts we submit, this is a fairly easy case, and Magistrate Judge Lane got it right and the district court on DeNova Review did as well. So the rollover agreement signed by Mr. Ney, he doesn't dispute he signed that one, has a very broad mandatory forum selection clause that submits to the exclusive jurisdiction of the Delaware courts any suit in respect of the interpretation and enforcement of that agreement and any related agreement, certificate, or other document delivered in connection herewith. Ney is not challenging the validity of this clause. He's not saying it's unreasonable, the product of fraud, or otherwise unenforceable. Those are the federal tenets that you stick to when you challenge a forum selection clause. Instead, he's just saying it doesn't apply. That is a contract interpretation question, and Mr. Ney's wrong. First off, if you just think about it, the oral contract in and of itself, if it exists, is clearly a related agreement, right? It wouldn't exist outside of the magnitude transaction embodied in the written agreements, and as you asked Judge Barstow, at Record on Appeals, site 548, paragraph 15 of his petition, when he describes the oral agreement, he expressly talks about rolling the $6 million, which is a clear allusion to the rollover agreement. His own description of the contract clearly implicates the rollover agreement. It involves an extended period of time with multiple requirements that overlap with the same circumstances of that agreement. His only argument on appeal is sort of grammatical gymnastics, right? He says if you read the clause, it talks about a document being delivered in connection herewith, but of course you can deliver an oral contract, right? And we cite this definition of deliver in our brief. You can deliver by giving forth in words, uttering, or pronouncing. I'm delivering this argument right now. The jury can deliver a verdict. They never respond, so even if you were to read those words as to related agreement, there's no reason why an oral agreement wouldn't be covered. And again, if you step back and just think about the situation, it makes no sense that a set of parties would have a clear contract with a merger clause saying there are no oral agreements and then a forum clause that somehow carves out oral agreements. So the rollover agreement clearly applies and I think is the easiest way to resolve this case, and that's what Magistrate Judge Lang did. The second reason the rollover agreement forum clause applies is because interpreting and enforcing the rollover agreement is part and parcel with resolving Mr. Ney's oral contract claim. The court would need to look at the merger clause, for example, to determine the validity of the claim. The only thing Mr. Ney says in response is, well, that requires looking at three eyes' defenses and you have to read his petition on its face, but there's no well-pleaded complaint rule when determining forum selection clauses. Again, this court's precedent gives you the answer. In the Ginter case in 2008, the court said, you look at the language of the clause with a common sense view of the petition. And whereas here the clause broadly applies to any litigation, respecting, regarding, et cetera, it covers claims and defenses. So that's not an escape patch for him either. The Braspetro oil case in 2007 is also on point. And the last thing I'd say on the rollover agreement is, even if you ignore those first two reasons it applies, there's a third, because the purchase agreement was a related agreement delivered the same day. So for three different reasons, the rollover agreement just ends this matter. I do want to separately address the argument on the purchase agreement, though, because I think that's important to clarify, too. Ney concedes, and he conceded below, too, that his whole case is basically over if the purchase agreement clause applies. And that's why he's bending over backwards to say, even though he negotiated it, he didn't sign it so he can't be bound, and the three IAPLEs didn't sign it so they can't bind him. But again, that's wrong. First, even though he didn't sign that one agreement, he assigned another that's attached to it, and he assigned the board approval in addition to a third agreement that's defined as the complete agreement. And under this court's law, all of those documents can be read together as a complete contract. The district court has precedent on point two. Secondly, the three IAPLEs actually did sign two of the contracts, the organizational agreements relevant to the deal. They're mentioned in the purchase agreement, and as the court astutely noted, we wouldn't be here if there wasn't some nexus that Ney is trying to draw on his complaint between three I and New Amsterdam. And in any event, the district court did not abuse its discretion, which is the standard, when applying direct benefits estoppel on these facts. This court has several cases, the Breedis case, Hellenic Investment Fund, and Vloebeer, which talk about facts like this, where you have a non-signatory who tries to take the benefit of and embrace a contract and then turn around and disclaim its burdens like the Forum Clause. And that's exactly what's happened here. Mr. Ney says in his petition that he negotiated this deal, he got money from this deal, he invested money in this deal, he stayed on as CEO because of this deal, and now tries to say the purchase agreement doesn't bind him. The only argument that Ney makes as to why this is wrong is he overstates the law and says another non-signatory can't force a non-signatory through direct benefits estoppel to abide a Forum Clause, but that's also wrong. We cite the Washington Mutual Finance Group from this court in 2004, where four non-signatory insurers were compelled to arbitrate with the non-signatory wife of the insured. So we have precedent from this court saying on these facts you can apply direct benefits estoppel. The Harlan Clark case that the district judge followed makes the same point. And again, these holdings make sense. If you just step back and take the 10,000-foot view and ask yourself what's going on, Mr. Ney started this suit by suing New Amsterdam and 3i. New Amsterdam was actually the signatory, and the Texas court and every court that has heard these claims before has enforced the Forum Clauses and dismissed them. It can't be the case that Mr. Ney's tactical decision to just scratch out New Amsterdam and write in 3i rather than go to Delaware means that direct benefits estoppel doesn't apply. The last thing I'd leave the court with is in addition to the two grounds that the magistrate gave you, which I think are perfectly acceptable and great grounds to affirm, there's also a restrictive covenant agreement with a broad and mandatory Forum Selection Clause covering the agreements delivered in connection herewith or the transactions contemplated hereby. That's at 1166 of the record on appeal. Any way you slice it, there are seven contracts. He doesn't dispute he signed six. He doesn't dispute the validity. The courts have all gotten it right. That should end this matter. We'll rest on our briefs. All right, thank you. Back to you for rebuttal, Ms. Giddey. May it please the court, I'd like to make three points in rebuttal. The first is to refocus the court on what these claims actually are. He is suing to enforce breach of an oral contract and various equitable claims to prevent 3I defendants' unjust enrichment. He is not suing to enforce any provision of the purchase agreement. He is not suing to enforce any provision of the rollover agreement. But beyond that, Your Honor, even if he were, 3I defendants didn't sign either of those two agreements. As non-signatories, they bear the burden of demonstrating why and under what theory they, as non-signatories to those agreements, can enforce them here. 3I defendants spend a lot of time trying to make Ney a party to the purchase agreement. We've explained in our brief why he is not a party. He didn't sign the agreement, and signing an exhibit to the agreement doesn't somehow make him a party to an agreement between two different parties. But the point is, even if he were a party to the purchase agreement, 3I defendants would still have to demonstrate why they, as non-signatories, can enforce the agreement against Ney. They can't get there on a direct benefit estoppel theory because that considers only whether a signatory to the agreement can enforce the forum selection clause against a non-signatory, and they're not signatories. They also can't do it on a closely related theory because that theory doesn't apply to the purchase agreement because the purchase agreement contains an explicit no third party beneficiary clause that disclaims the party's intent to extend that contract's benefits or burdens to non-parties. There's no equitable theory that allows a non-signatory to enforce a provision within a contract against another non-signatory. I've seen the term used, quote, kicker, close quote, for this $20 million payment that Ney claims he's entitled. Is that term kicker used in your complaint? Yes, that term is used in our complaint. Does the complaint describe or state what a kicker is? I assume you're not saying it's a kickback. The kicker is the side deal that Oleneks took with Ney. I understand that, but what does the term kicker mean? Is that explained in the complaint? That's just a term to refer to this side deal that represents the delta between the $360 million originally promised and the $340 million that they came back with. My question is, is the term kicker, K-I-C-K-E-R, is that the way you spell it? Yes, that's the way we spell it. Is that ever defined in your complaint? That's not defined. It's just shorthand for the side deal. Is that shorthand for kickback? No, that's just the side deal that he struck with Olenek that accounts for the delta between the previously offered price and the purchase price. Does your complaint state who came up with the term kicker? No, it doesn't. That's a shorthand way of referring to this side deal, and apologies if that's unclear or ambiguous. The second point that we want to make is that all . . . 3-I defendants want to claim that Ney is trying to create a new species of motion to dismiss, but that's not what he's doing. Atlantic Marine didn't provide us with a framework for dealing with this situation because Atlantic Marine, like the vast majority of cases, there's no dispute about the defendant's ability to enforce that contract because both parties in that case were signatories. But what Atlantic Marine did announce is that the right procedural vehicle for enforcing a forum selection clause is a motion to dismiss for forum non-convenes. So all Ney is submitting is that the normal procedural guardrails that should apply to all motions to dismiss, whether they be based on the complaint or on the basis of extrinsic evidence, that those procedural guardrails apply to this case as well. But the district court's process here gave 3-I defendants all of the procedural benefits and Ney none of the procedural protections. It allowed 3-I defendants to simply assert they could enforce these agreements even though they didn't sign them, didn't require them to substantiate their fact-intensive estoppel theories with evidence, and then denied Ney the opportunity to do any of the discovery he needed to test those theories for enforcing the agreements as non-signatories. To conclude, Your Honor, Ney is suing for breach of an oral contract. He is not suing to enforce any of the provisions in these written agreements attached to defendant's motion to dismiss, and 3-I defendants haven't met their burden to demonstrate why and under what theory they as non-signatories should get to enforce the forum selection clauses in these two agreements. Thank you. Thank you, Ms. Diddy. Thank you, Mr. Roth, for your briefing and oral argument. The case will be submitted and we'll get it decided. You may be excused. All right, we'll call the second case.